**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **NARASINGARAO SREENATH and SHOBHA SREENATH**<br>6100 Loch Lomond Ct.<br>Solon, OH 44139<br><br>        Plaintiffs,<br><br>    v.<br><br>**NEW PENN FINANCIAL, LLC dba SHELLPOINT MORTGAGE SERVICING**<br>c/o Corporation Service Company<br>50 West Broad Street, Suite 1330<br>Columbus OH 43215<br><br>and<br><br>**MANLEY DEAS & KOCHALSKI LLC**<br>c/o Corporation Service Company<br>50 West Broad Street, Suite 1330<br>Columbus OH 43215<br><br>        Defendants. | Case No. 1:17-cv-1061<br><br><br><br>        <u>**COMPLAINT**</u><br><br><br>        <u>**With Jury Demand**</u> |

Plaintiffs Narasingarao (Sree) and Shobha Sreenath, by and through counsel, for their Complaint against Defendants New Penn Financial, LLC dba Shellpoint Mortgage Servicing, and Manley Deas & Kochalski LLC, states as follows:

**<u>PARTIES, JURISDICTION, AND VENUE</u>**

1.      Plaintiffs Narasingarao (Sree) and Shobha Sreenath ("Sreenaths" or "Plaintiffs") are the owners of a home located at 6100 Loch Lomond Ct., Solon, Ohio 44139 (the "Home").

2.      At all times relevant, the Sreenaths have maintained and currently maintain the Home as their primary, principal residence.

3.      Defendant New Penn Financial, LLC dba Shellpoint Mortgage Servicing

("Defendant" or "Shellpoint")[1] is currently, and has been at all times relevant, the servicer of a note (the "Note") and a mortgage on the Home that allegedly secures the Note (the "Mortgage") (collectively referred to hereinafter as the "Loan").

4.      Defendant Manley Deas & Kochalski LLC ("Manley Deas") is a law firm located in Columbus, OH, which was retained by Shellpoint to file a foreclosure suit against the Sreenaths in an effort to collect a debt allegedly owed on the Loan, in the Cuyahoga County Court of Common Pleas, Case No. 14 CV 834640.

5.      This Court has jurisdiction pursuant to 28 U.S.C. § 1331 as this action arises under the Dodd-Frank Wall Street Reform and Consumer Protection Act (DFA), the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601, *et seq*. (RESPA), and the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, *et seq*. (FDCPA).

6.      This action is filed to enforce regulations promulgated by the Consumer Finance Protection Bureau (CFPB) that became effective on January 10, 2014, specifically, 12 C.F.R. §§ 1024.35, 1024.36, and 1024.41 of Regulation X.

7.      This Court has supplemental jurisdiction to hear any and all state law claims pursuant to 28 U.S.C. § 1367.

8.      Venue lies in this District pursuant to 28 U.S.C. § 1391(b) as the Sreenaths maintain the Home as their primary residence in this District.

## INTRODUCTION

9.      In an effort to save their home from foreclosure, the Sreenaths applied to their servicer, Shellpoint, for a loan modification.

10.     For months, Shellpoint dragged its feet and failed to review the Sreenaths'

---

[1] In the State of Ohio, Shellpoint Mortgage Servicing is a registered trade name of New Penn Financial, LLC (https://www.sos.state.oh.us/sos/ last visited 05/19/2017 at 3:54 p.m.).

application for loss mitigation options, ignoring Sreenaths' loss mitigation submissions and demanding information which had already been provided, all while aggressively moving forward with foreclosure litigation.

11.     Alarmed at Shellpoint's failure to review their application for loss mitigation options, the Sreenaths submitted three (3) separate Notices of Error to Shellpoint, yet Shellpoint ignored the Sreenaths' pleas and failed to correct its errors and complete a timely loss mitigation review.

12.     Manley Deas moved forward with the foreclosure litigation even though it had directly received the Sreenaths' loss mitigation applications on behalf of Shellpoint.

13.     In January 2013, the CFPB issued a number of final rules concerning mortgage markets in the United States, pursuant to the DFA, Public Law No. 111-203, 124 Stat. 1376 (2010).

14.     Specifically, on January 17, 2013, the CFPB issued the RESPA (Regulation X) Mortgage Servicing Final Rules, 78 F.R. 10695 (February 14, 2013), which became effective on January 10, 2014.

15.     The Loan in the instant matter is a "federally related mortgage loan" as said term is defined by 12 C.F.R. § 1024.2(b).

16.     Shellpoint is subject to the aforesaid Regulations and does not qualify for the exception for "small servicers", as such term is defined in 12 C.F.R. § 1026.41(e)(4), nor the exemption for a "qualified lender", as such term is defined in 12 C.F.R. § 617.700.

17.     The Sreenaths have a private right of action under RESPA pursuant to 12 U.S.C. § 2605(f) for the claimed breaches and such action provides for remedies including actual damages, costs, statutory damages, and attorneys' fees.

18.     The Sreenaths are asserting a claim for relief against Shellpoint for breaches of the specific rules under Regulation X as set forth, *infra*.

19.     The Ohio Consumer Sales Practices Act is a state consumer protection law prohibiting unfair and deceptive acts and practices by suppliers before, during, or after a consumer transaction.  R.C. § 1345.02(A).

20.     Shellpoint and Manley Deas are suppliers, the Sreenaths are consumers, and the Loan is a consumer transaction, subject to the requirements of the Ohio Consumer Sales Practices Act.

21.     The Sreenaths also assert a private right of action against Shellpoint and Manley Deas for unfair and deceptive acts and practices in servicing and collecting on the Loan.

22.     The Fair Debt Collection Practices Act (FDCPA) was enacted by Congress to prohibit the "[u]se of abusive, deceptive, and unfair debt collection practices." 15 U.S.C § 1692a.

23.     Manley Deas is a debt collector, the Sreenaths are consumers, and the Loan is a debt, as defined by the FDCPA.

24.     The Sreenaths also assert a private right of action against Manley Deas under the FDCPA, pursuant to 15 U.S.C. § 1692k, for Manley Deas' conduct in connection with collection of the Loan and the Sreenaths are entitled to recover actual damages, statutory damages, costs, and attorneys' fees.

## **BACKGROUND**

25.     The Sreenaths first submitted an application for a loan modification to Shellpoint on June 22, 2016 via email to Manley Deas attorneys, David Bokor and John Codrea. This was the Sreenaths' first application for loss mitigation to Shellpoint. Email to Manley Deas dated June 22, 2016, reflecting Plaintiffs' submission of their first loan modification application is

attached as *Plaintiffs' Exhibit 1*.

26.     In response to the loan modification application, Shellpoint sent a letter to the Sreenaths, dated June 27, 2016, requesting additional documents by July 27, 2016.  Shellpoint's letter dated June 27, 2016 is attached as *Plaintiffs' Exhibit 2*.

27.     On July 27, 2016, the Sreenaths submitted the requested additional documents to Shellpoint via email to Manley Deas attorneys, David Bokor and John Codrea, including a signed and dated year-to-date profit and loss statement. The Sreenaths' first loan modification application was complete as of July 27, 2016. Email to Manley Deas dated July 27, 2016, with requested additional documents, is attached as *Plaintiffs' Exhibit 3*.

28.     On July 29, 2016, Shellpoint sent the Sreenaths a second request for a third party authorization document, which the Sreenaths provided to Shellpoint's counsel on July 27, 2016. Shellpoint's second request dated July 29, 2016 is attached as *Plaintiffs' Exhibit 4*.

29.     On September 6, 2016, Shellpoint sent the Sreenaths a letter informing them that Shellpoint is "unable to offer you a loss mitigation option because you did not provide us with the documents we requested." This was not only inaccurate but even if it was accurate Shellpoint failed to conduct a review of any and all loss mitigation options available to the Sreenaths pursuant to their application. Shellpoint's September 6, 2016 Loss Mitigation Denial is attached as *Plaintiffs' Exhibit 5*.

30.     On September 20, 2016, the Sreenaths, by and through counsel, sent Shellpoint a Notice of Error ("NOE #1") for failure to conduct a timely review of loss mitigation options and improper denial of loss mitigation options to the Sreenaths.  A true and correct copy of the NOE #1 sent *via* Certified Mail [Receipt No. 7016 0340 0000 9159 7293] is attached as *Plaintiffs' Exhibit 6*.

31.     By letter dated October 24, 2016, Shellpoint responded to the September 20, 2016

Notice of Error as follows:

> Shellpoint received documentation in July of 2016, however we were missing a
> signed and dated Profit and Loss Statement in a quarterly (xx/xx/xxxx-
> xx/xx/xxxx) format. Due to Shellpoint not receiving the requested documentation
> over a certain period of time, the file for the modification review was closed, and
> a letter dated September 6, 2016 was sent, which stated that we were unable to
> offer a loss mitigation option, because we were not provided with the documents
> we requested.
>
> In order to evaluate Mr. Sreenath's file to assess his eligibility for a loan
> modification we require the following documentation.
>
> **Required Documentation:**
>
> ●     **Uniform Borrower Assistance Form (enclosed)**
> ●     **IRS Form 4506-T (enclosed)**
> ●     **Dodd-Frank Certification Form (enclosed)**
> ●     **Statement from homeowner's association reflecting your
>        monthly/annual dues (if applicable)**
> ●     **Proof of Income (where applicable)**
>        ○     Most recent month's paystubs (wage earner)
>        ○     Year-to-date or most recent quarterly Profit and Loss Statement
>              (self employed)....

Shellpoint's October 24, 2016 Response is attached as *Plaintiffs' Exhibit 7*.

32.     Shellpoint did not notify the Sreenaths prior to the October 24, 2016 Response of

the requirement that the Profit and Loss Statement be "in a quarterly (xx/xx/xxxx-xx/xx/xxxx)

format." *Id*.

33.     On November 15, 2016, the Sreenaths submitted another complete application for

a loan modification to David Bokor, Matthew J. Richardson, and John Codrea, Manley Deas

attorneys representing Shellpoint in the foreclosure litigation.  Email to Manley Deas dated

November 15, 2016, reflecting Plaintiffs' submission of their second complete loan modification

application is attached as *Plaintiffs' Exhibit 8*.

34.     Shellpoint failed to acknowledge the loss mitigation application, to request any

additional documents, or to complete a timely loss mitigation review.

35.     On January 9, 2017, the Sreenaths sent Shellpoint a second Notice of Error ("NOE #2") for failing to timely acknowledge their loss mitigation application and complete a loss mitigation review. A true and correct copy of the NOE #2 sent *via* Certified Mail [Receipt No. 7015 1520 0001 6615 4002] is attached as *Plaintiffs' Exhibit 9*.

36.     Shellpoint failed to acknowledge the January 9, 2017 Notice of Error or to properly investigate the error.

37.     By letter dated January 27, 2017, Shellpoint responded to the January 9, 2017 Notice of Error as follows:

> … With regard to the prior loan workout review on the mortgage, please note that a review of the mortgagor's financial circumstances was initiated on or about June 23, 2016.  This review resulted in a workout denial on September 6, 2016, as Shellpoint did not receive the required documentation from the mortgagor in order to determine eligibility… Shellpoint then sent, by way of your firm, a solicitation letter dated October 31, 2016, which outlined the documentation necessary to initiate a review of the mortgagor's eligibility for a possible loan modification.  Shellpoint did not receive any response to this solicitation…

Shellpoint's January 27, 2017 Response is attached as *Plaintiffs' Exhibit 10*.

38.     On February 20, 2017, the trial court in the foreclosure case overruled the Sreenaths' objections to the magistrate judge's February 19, 2016 decision granting a foreclosure judgment to the plaintiff in the foreclosure case. A copy of the docket for foreclosure case number 14-CV-834640, *Bank of New York Mellon vs. Sreenath, et al.*, is attached as *Plaintiffs' Exhibit 11*.

39.     On March 24, 2017, the Sreenaths sent Shellpoint a third Notice of Error ("NOE #3") for failure to properly investigate and respond to the Sreenaths' January 9, 2017 Notice of Error ("NOE #2"). A true and correct copy of the NOE #3 sent *via* Certified Mail [Receipt No.

7014 2120 0003 0665 6986] is attached as *Plaintiffs' Exhibit 12*.

40.     On March 28, 2017, Manley Deas attorney, Matthew Richardson, filed a proposed judgment entry for the trial court to adopt the magistrate's decision granting a foreclosure judgment. *See Plaintiffs' Exhibit 11*.

41.     On April 5, 2017, the trial court signed the proposed entry filed by Manley Deas and entered a foreclosure judgment in favor of the plaintiff in the foreclosure case. *Id*.

42.     By letter dated April 7, 2017, Shellpoint sent a notice acknowledging the Sreenaths' prior loan modification submission, and requesting that the Sreenaths provide additional documents amounting to an entirely new loan modification application by no later than May 7, 2017.  Shellpoint's April 7, 2017 Notice is attached as *Plaintiffs' Exhibit 13*.

43.     By letter dated April 17, 2017, Shellpoint responded to the Sreenaths' March 24, 2017 NOE #3 regarding its failure to timely complete a loss mitigation review as follows:

> Shellpoint acknowledges receipt of your correspondence dated March 24, 2017.  We regret that our letters sent to you dated December 18, 2016 and January 27, 2017, inadvertently did not address your concerns regarding the loss mitigation application received by our office on November 15, 2016.  As of the date of this communication, Shellpoint has completed its review into the matter and confirmed our office received the aforementioned loss mitigation application, which consisted of the following documentation:
> - IRS Form 4506-T
> - Borrower's Authorization Form
> - Monthly Expense Tracking From (sic)
> - Uniform Borrower Assistance Form
> - Request for Mortgage Assistance Form (RMA)
> - Dodd Frank Certification Form
> - Government Monitoring Data Form
> - Information Sharing Authorization
> - Hardship Letter
> - Paystubs
> - 2015 Tax Return
> - Bank Statements
> - Non-Borrower Contribution Form
> - Profit and Loss Statement
> - State Farm Fire and Casualty Company's Renewal Certificate

- Homeowner's Association Statement
- Tax Bill Summary Statement

***The documents were not properly logged into our loss mitigation system; consequently the documents were not reviewed by our Loss Mitigation Department.*** We apologize for any inconvenience that this matter may have caused.  (Emphasis added.)

Shellpoint's April 17, 2017 Response to NOE #3 is attached as *Plaintiffs' Exhibit 14*.

44.     The letter stated that additional documentation was required to complete the loss mitigation review, specifically a "signed/dated Letter advising if Narasingarao Sreenath is paid on a ten (10) or twelve (12) month basis for teaching."  *Id.*

45.     On April 19, 2017, Manley Deas filed a praecipe for an order of sale, seeking to enforce the foreclosure judgment through a foreclosure sale of the Sreenaths' home in violation of 12 C.F.R. §1024.41(g). The April 19, 2017 Praecipe for Order of Sale is attached as *Plaintiffs' Exhibit 15*.

46.     On April 20, 2017, *via* email to counsel for Manley Deas, the Sreenaths sent Shellpoint each of the additional documents requested in the April 7, 2017 letter. Email to Manley Deas dated April 20, 2017, reflecting Plaintiffs' submission of additional documents requested is attached as *Plaintiffs' Exhibit 16*.

47.     On April 24, 2017, *via* email to counsel with Manley Deas, the Sreenaths sent Shellpoint a letter of explanation of Mr. Sreenath's teaching income, as requested by Shellpoint in its April 17, 2017 letter. Email to Manley Deas dated April 24, 2017, explaining Mr. Sreenath's teaching income is attached as *Plaintiffs' Exhibit 17*.

48.     On April 24, 2017, Shellpoint requested that the Sreenaths submit a Third Party Authorization form. Shellpoint's April 24, 2017 Request is attached as *Plaintiffs' Exhibit 18*.

49.     As Shellpoint acknowledged in its April 17, 2017 response to the Sreenaths' NOE #3 (*Exhibit 14*), the Sreenaths had previously submitted a complete Third Party Authorization

Form to Shellpoint.

50.     Although the Sreenaths had previously submitted the Third Party Authorization form to Shellpoint in November 2016 and on April 20, 2017, they resubmitted it to Shellpoint *via* email to Manley Deas and *via* facsimile to Shellpoint on May 4, 2017. Email and facsimile confirmation to Manley Deas dated May 4, 2017, reflecting Plaintiffs' submission of the requested Third Party Authorization are collectively attached as *Plaintiffs' Exhibit 19*.

51.     By letter dated May 5, 2017, Shellpoint made a third request to the Sreenaths for the Third Party Authorization form that the Sreenaths had submitted one day prior to the date of the letter, and previously on April 20, 2017 and in November 2016.  Shellpoint's May 5, 2017 Request is attached as *Plaintiffs' Exhibit 20.*

52.     On May 5, 2017, the trial court granted the Praecipe for Sale, and scheduled a foreclosure sale of the Sreenaths' home for June 5, 2017. Journal Entry in Case Number 14-CV-834640, "Notice of Sale and Approval of Appraisers' Fees" is attached as *Plaintiffs' Exhibit 21*.

53.     On May 9, 2017, Shellpoint notified the Sreenaths that their application for loss mitigation was complete, but that Shellpoint refused to evaluate the request because the foreclosure sale was scheduled for June 5, 2017. Shellpoint's May 9, 2017 Notice of refusal to evaluate is attached as *Plaintiffs' Exhibit 22.*

54.     Due to the conduct of Shellpoint and Manley Deas, the Sreenaths have incurred legal fees for unnecessary foreclosure litigation and have lived with anxiety and stress caused by a fear that they would lose their home to foreclosure without ever receiving a review of their loss mitigation options.

55.     Throughout this entire ordeal, the Sreenaths have simply wanted a review by their servicer of their loss mitigation options to save their home from foreclosure.

56.     Due to Shellpoint's and Manley Deas' conduct in pressing forward with foreclosure litigation while failing to timely review the Sreenaths' facially complete loss mitigation application, the Sreenaths may lose their home.

57.     Shellpoint's wrongful and willful actions have caused the Sreenaths to suffer great emotional distress driven by the fear and uncertainty about whether they will lose their home.

58.     Shellpoint and Manley Deas' actions have caused the Sreenaths to spend countless hours gathering duplicative documents and filling out duplicative forms; to spend money on paper, postage and legal fees to send multiple letters asking Shellpoint to review their loan for loss mitigation options; and have been forced to expend legal fees to defend against ongoing litigation in the foreclosure case.

59.     At the time of the filing of this Complaint, Shellpoint has had more than Five Hundred Eighty (580) consumer complaints lodged against it nationally, specifically concerning the issue identified on the CFPB's consumer complaint database as "loan modification, collection, foreclosure" related to mortgages. Each such complaint is filed and cataloged in the CFPB's publicly accessible online database. (http://www.consumerfinance.gov/complaint database/).

| COUNT STATUTE VIOLATED | SUMMARY OF CLAIM AND VIOLATIONS |
| --- | --- |
| One (**Shellpoint**)<br><br>12 C.F.R. § 1024.41(b)(2)<br><br>12 C.F.R. § 1024.41(c)(1)<br><br>*Failure to Timely Review* | • 06/22/2016 Sreenaths submitted **first** loss mitigation application.<br>• 07/27/2016 First loss mitigation application facially complete.<br><br>*Violation: Shellpoint failed to timely complete a loss mitigation review.*<br><br>• 11/15/2016 Sreenaths submitted **second** facially complete loss mitigation application. |

| COUNT<br>STATUTE VIOLATED | SUMMARY OF CLAIM AND VIOLATIONS |
|---|---|
| | *Violation: Shellpoint failed to timely complete a loss mitigation review.*<br><br>• 04/20/2017 Sreenaths submitted **third** facially complete loss mitigation application.<br><br>*Violation: Shellpoint repeatedly failed to timely complete a loss mitigation review.* |
| Two<br>**(Shellpoint)**<br><br>12 C.F.R. § 1024.41(g)<br><br>*Dual Tracking* | • Sreenaths submitted three facially complete loss mitigation applications, most recently on April 20, 2017, with all requested documents submitted on April 20, 2017 and April 24, 2017.<br>• On April 24, 2017, no foreclosure sale had been scheduled.<br>• Sreenaths' complete loss mitigation application was submitted ***42 days prior to June 5, 2017.***<br>• Shellpoint has never sent written notice to Sreenaths that they are not eligible for any loss mitigation options.<br>• Sreenaths have never rejected any loss mitigation option offered by Shellpoint.<br>• Sreenaths have never failed to perform under an agreement on a loss mitigation option.<br>• Shellpoint caused the foreclosure sale of the Sreenaths' Home to be scheduled for June 5, 2017.<br><br>*Violations:*<br>▪ *Shellpoint failed to perform under an agreement on a loss mitigation option.*<br>▪ *Shellpoint failed to promptly notify its foreclosure counsel, Manley Deas, that it was in possession of the Sreenaths' complete loss mitigation application.*<br>▪ *Shellpoint moved for an order of sale on April 19, 2017.*<br>▪ *Shellpoint caused the foreclosure sale of the Sreenaths' Home to be scheduled for June 5, 2017.*<br>*Shellpoint has not taken any steps to avoid the conduct of the foreclosure sale scheduled for June 5, 2017.* |
| Three<br>**(Shellpoint)**<br><br>12 C.F.R. § 1024.35<br><br>*Failure to Acknowledge Notices of Error ("NOE") or to Correct Errors* | **1ˢᵗ NOE** sent 09/20/2016 for failure to conduct a timely review of loss mitigation options and improper denial of loss mitigation options related to Sreenaths' first loss mitigation application.<br><br>*Violations:*<br>▪ *Shellpoint failed to timely acknowledge the 09/20/2016 NOE.*<br>▪ *Shellpoint failed to perform a reasonable investigation into NOE.* |

| COUNT<br>STATUTE VIOLATED | SUMMARY OF CLAIM AND VIOLATIONS |
|---|---|
|  | **2nd NOE** sent 01/09/2017 for failure to conduct a timely review of loss mitigation options following the Sreenaths' submission of their second loss mitigation application.<br><br>*Violations:*<br>▪ *Shellpoint failed to timely acknowledge the 01/09/2017 NOE.*<br>▪ *Shellpoint failed to respond to the 01/09/2017 NOE.*<br><br>**3rd NOE** sent 03/24/2017 for failure to investigation and properly respond to the Sreenaths' prior two NOEs.<br><br>*Violations:*<br>▪ *Shellpoint failed to correct the admitted error noticed by and through the 01/09/2017 NOE.* |
| Four<br>**(Shellpoint and (Manley Deas)**<br><br>R.C. § 1345.02(A)<br><br>*Dual Tracking* | The conduct of Shellpoint and Manley Deas was outrageous, willful, and wanton, and showed a reckless disregard for the Sreenaths' rights.<br><br>*Violation:*<br>▪ *Unfair and deceptive acts and practices by failing to timely review the Sreenaths' facially complete loss mitigation application while simultaneously moving forward to obtain a foreclosure judgment and sale.* |
| Five<br>**(Manley Deas)**<br><br>15 U.S.C. § 1692k<br><br>*FDCPA Unfair and Unconscionable means to collect a debt* | Manley Deas knew that the Sreenaths had submitted three facially complete loss mitigation applications to Shellpoint which had not yet been reviewed, but moved forward with foreclosure litigation, i.e., "dual tracking" which is specifically prohibited under RESPA.<br><br>Manley Deas' conduct was an unconscionable means to collect or attempt to collect a debt.<br><br>*Violation:*<br>▪ *Manley Deas' conduct constituted an unconscionable means to collect or attempt to collect a debt.*<br>▪ *Manley Deas employed an unfair and unconscionable means to collect the subject debt.*<br><br>Manley Deas' conduct was outrageous, willful, and wanton, and showed a reckless disregard for the Sreenaths' rights. |

**COUNT ONE: AGAINST SHELLPOINT**
**MULTIPLE VIOLATIONS OF 12 C.F.R. § 1024.41(b)(2) and 12 C.F.R. § 1024.41(c)(1)**
**(Failure to timely acknowledge and review loss mitigation applications)**

60.     The Sreenaths restate and incorporate herein each of their statements and allegations contained in paragraphs 1 through 59 in their entirety, as if fully rewritten herein.

61.     12 C.F.R. § 1024.41(b)(2) provides that "[i]f a servicer receives a loss mitigation application 45 days or more before a foreclosure sale, a servicer shall: (A) Promptly upon receipt of a loss mitigation application, review the loss mitigation application to determine if the loss mitigation application is complete; and (B) Notify the borrower in writing within 5 days (excluding legal public holidays, Saturdays, and Sundays) after receiving the loss mitigation application that the servicer acknowledges receipt of the loss mitigation application and that the servicer has determined that the loss mitigation application is either complete or incomplete.  If the loss mitigation application is incomplete, the notice shall state the additional documents and information the borrower must submit to make the loss mitigation application complete and the applicable date pursuant to paragraph (2)(ii) of this section."

62.     12 C.F.R. § 1024.41(c)(1) provides that "[i]f a servicer receives a complete loss mitigation application more than 37 days before a foreclosure sale, then, within 30 days of receiving a borrower's complete loss mitigation application, a servicer shall:(i) Evaluate the borrower for all loss mitigation options available to the borrower; and (ii) Provide the borrower with a notice in writing stating the servicer's determination of which loss mitigation options, if any, it will offer to the borrower on behalf of the owner or assignee of the mortgage. The servicer shall include in this notice the amount of time the borrower has to accept or reject an offer of a loss mitigation program as provided for in paragraph (e) of this section, if applicable, and a notification, if applicable, that the borrower has the right to appeal the denial of any loan

modification option as well as the amount of time the borrower has to file such an appeal and any requirements for making an appeal, as provided for in paragraph (h) of this section."

63.     12 C.F.R. § 1024.41(c)(2)(iv) provides that "If a borrower submits all the missing documents and information as stated in the notice required pursuant to § 1026.41(b)(2)(i)(B), or no additional information is requested in such notice, the application shall be considered facially complete. If the servicer later discovers additional information or corrections to a previously submitted document are required to complete the application, the servicer must promptly request the missing information or corrected documents and treat the application as complete for the purposes of paragraphs (f)(2) and (g) of this section until the borrower is given a reasonable opportunity to complete the application. If the borrower completes the application within this period, the application shall be considered complete as of the date it was facially complete, for the purposes of paragraphs (d), (e), (f)(2), (g), and (h) of this section, and as of the date the application was actually complete for the purposes of paragraph (c). A servicer that complies with this paragraph will be deemed to have fulfilled its obligation to provide an accurate notice under paragraph (b)(2)(i)(B).

64.     12 C.F.R. § 1024.41(a) explicitly provides that "[a] borrower may enforce the provisions of this section pursuant to section 6(f) of RESPA (12 U.S.C. §2605(f))".

65.     Shellpoint failed to timely review the Sreenaths for loss mitigation options despite receipt of three facially complete loan modification applications.

66.     The Sreenaths first submitted a loss mitigation application in June 2016. *See Plaintiffs' Exhibit 1.*

67.     The Sreenaths' first loss mitigation application became facially complete after the Sreenaths submitted all of the missing information and documentation requested by Shellpoint

via email in July 2016. *See Plaintiffs' Exhibits 1 and 3*.

68.     Shellpoint committed a violation of 12 § 1024.41(c)(1) when Shellpoint failed to timely complete a loss mitigation review of the June 2016 loss mitigation application.

69.     Because the first application was never reviewed, the Sreenaths submitted another facially complete loss mitigation application in November 2016. *See Plaintiffs' Exhibit 8*.

70.     Shellpoint committed a violation of 12 C.F.R. § 1024.41(b)(2) when Shellpoint failed to acknowledge receipt of the loss mitigation application in November 2016.

71.     Shellpoint committed a violation of 12 C.F.R. § 1024.41(c)(1) when Shellpoint failed to timely complete a loss mitigation review of the November 2016 loss mitigation application.

72.     Because the previous two applications were never reviewed on the merits, the Sreenaths submitted a third facially complete loss mitigation application on April 20, 2017. *See Plaintiffs' Exhibits 16 and 17*.

73.     Shellpoint acknowledged the Sreenaths' April 20, 2017 loss mitigation application by requesting a Third Party Authorization that the Sreenaths had previously submitted in July and November 2016, and in the April 20, 2017 loss mitigation application.  *See Plaintiffs' Exhibit 18*.

74.     The Sreenaths resubmitted the Third Party Authorization to Shellpoint on May 4, 2017, noting that the document had been previously submitted on April 20, 2017. *See Plaintiffs' Exhibit 19*.

75.     On May 5, 2017, Shellpoint made a third request for the Third Party Authorization which had been previously submitted on April 20, 2017 and May 4, 2017. *See Plaintiffs' Exhibit 20*.

76.     The Sreenaths' April 20, 2017 loss mitigation application was facially complete upon receipt as Shellpoint did not request any new documents or information not previously submitted.

77.     Shellpoint committed a violation of 12 C.F.R. § 1024.41(c)(1) when Shellpoint failed to timely complete a loss mitigation review of the April 20, 2017 loss mitigation application.

78.     Shellpoint failed to properly acknowledge the Sreenaths' loss mitigation applications and timely review their loan for loss mitigation options as described and outlined, *supra*.

79.     Shellpoint's actions are part of a pattern and practice of behavior in conscious disregard for the Sreenaths' rights.

80.     As a direct and proximate result of Shellpoint's conduct, the Sreenaths were forced to incur attorneys' fees and costs, spend time filling out duplicative forms and gathering duplicative documents, and remained in a state of uncertainty and limbo regarding their ability to remain in their family home.

81.     As a result of Shellpoint's actions, Shellpoint is liable to the Sreenaths for actual damages, statutory damages for each violation of 12 C.F.R. § 1024.41, costs, and attorneys' fees.

**COUNT TWO:  AGAINST SHELLPOINT**
**VIOLATION OF 12 C.F.R. § 1024.41(g)**
**(Failure to take reasonable steps to avoid foreclosure sale)**

82.     The Sreenaths restate and incorporate herein each of their statements and allegations contained in paragraphs 1 through 59 in their entirety, as if fully rewritten herein.

83.     12 C.F.R. § 1024.41(g) states that if a borrower submits a complete loss mitigation application after the first filing required for any judicial foreclosure process, but more

than thirty-seven (37) days before a foreclosure sale, then a servicer cannot move for foreclosure judgment or order of sale unless: (1) the servicer has sent written notice pursuant to 12 C.F.R. §1024.41(c)(1)(ii), stating that the borrower is not eligible for any loss mitigation options and the borrower has not requested an appeal, or the borrower's appeal has been denied; (2) the borrower rejects all loss mitigation options offered by the servicer; or, (3) the borrower fails to perform under an agreement on a loss mitigation option.

84.     Comment 3 of the Official Interpretations of 12 C.F.R. § 1024.41(g) provides that:

> A servicer is responsible for promptly instructing foreclosure counsel retained by the servicer not to proceed with filing for foreclosure judgment or order of sale, or to conduct a foreclosure sale, in violation of § 1024.41(g) when a servicer has received a complete loss mitigation application, which may include instructing counsel to move for a continuance with respect to the deadline for filing a dispositive motion.

85.     The Sreenaths have submitted three facially complete loss mitigation applications, most recently on April 20, 2017.

86.     On April 19, 2017, Manley Deas, the law firm, retained by Shellpoint in the foreclosure action, moved for an order of sale while Shellpoint admittedly had not performed any review of any of the previous loss mitigation applications.

87.     A foreclosure sale of the Home is currently scheduled for June 5, 2017.

88.     The September 6, 2016 Response states that Shellpoint was "unable to offer [the Sreenaths] a loss mitigation option because [the Sreenaths] did not provide us with the documents we requested." In the September 20, 2016 Notice of Error, the Sreenaths state that they did, in fact, submit all documents requested by Shellpoint.   In the October 24, 2016 Response, Shellpoint states that because they did not receive a Profit and Loss Statement in quarterly (xx/xx/xxxx-xx/xx/xxxx) format, they were unable to offer the Sreenaths a loss

mitigation option. At no time prior to the October 24, 2016 Response had Shellpoint requested a Profit and Loss Statement that was in a (xx/xx/xxxx-xx/xx/xxxx) format. *See Plaintiffs' Exhibits 5, 6 and 7*.

89.    The May 9, 2017 Loss Mitigation Denial acknowledges that Shellpoint had "received [the Sreenaths'] complete request for loss mitigation program. Unfortunately, Shellpoint will not be able to evaluate [the Sreenaths'] loan due to [the Sreenaths'] loan being scheduled for foreclosure sale on June 5, 2017." *See Plaintiffs' Exhibit 22*.

90.    The Sreenaths submitted all documents requested in the April 7, 2017 Shellpoint letter to Sreenaths and the April 17, 2017 Response to the Notice of Error on April 20, 2017 and April 24, 2017, forty-two (42) days prior to the June 5, 2017.  *See Plaintiffs' Exhibits 16 and 17*.

91.    Further, the foreclosure sale had not been scheduled on April 24, 2017.  The foreclosure sale was not scheduled until May 5, 2017. *See Plaintiffs' Exhibit 21*.

92.    Shellpoint was required to promptly notify its foreclosure counsel that it was in possession of a complete loss mitigation application.

93.    At no point in time has Shellpoint ever sent any written notice pursuant to 12 C.F.R. §1024.41(c)(1)(ii), stating that the Sreenaths are not eligible for any loss mitigation options.

94.    At no point in time have the Sreenaths ever rejected any loss mitigation option offered by Shellpoint.

95.    At no point in time have the Sreenaths failed to perform under an agreement on a loss mitigation option.

96.    Shellpoint has not taken any steps to avoid the conduct of the foreclosure sale scheduled for June 5, 2017.

97.     As such, in moving for an order of sale on April 19, 2017, Shellpoint committed a clear violation of 12 C.F.R. § 1024.41(g).

98.     As a result of Shellpoint's conduct, the Sreenaths have been forced to expend additional legal fees to file an appeal and it is anticipated that additional legal work will be necessary to move the trial court to stay the sale of the home.

### COUNT THREE: AGAINST SHELLPOINT
### MULTIPLE VIOLATIONS OF 12 C.F.R. § 1024.35
### (Failure to properly acknowledge and respond to notices of error in violations of 12 C.F.R. § 1024.35)

99.     The Sreenaths restate and incorporate herein each of their statements and allegations contained in paragraphs 1 through 59 in their entirety, as if fully rewritten herein.

100.    12 C.F.R. § 1024.35(d) provides that "[w]ithin five days (excluding legal public holidays, Saturdays, and Sundays) of a servicer receiving a notice of error from a borrower, the servicer shall provide to the borrower a written response acknowledging receipt of the notice of error."

101.    12 C.F.R. § 1024.35(e)(1) provides that a servicer must respond to a notice of error by either "[c]orrecting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance" or "[c]onducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance."

102.     12 C.F.R. § 1024.35(b)(9) explicitly states that a servicer commits an error in the servicing of a mortgage loan by "[m]aking the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process in violation of § 1024.41(f) or (j)."

103.     12 C.F.R. § 1024.35(e)(3)(i)(B) provides that, in regard to a notice of error submitted pursuant to 12 C.F.R. § 1024.35(b)(10), a servicer must comply with 12 C.F.R. § 1024.35(e)(1) no later than thirty (30) days, excluding legal public holidays, Saturdays, and Sundays, after the servicer's receipt of the applicable notice of error or prior to the date of a foreclosure sale, whichever is earlier.

104.     On September 20, 2016, the Sreenaths first sent Shellpoint a Notice of Error to the address designated pursuant to 12 C.F.R. § 1024.35(c) for failure to conduct a timely review of loss mitigation options and improper denial of loss mitigation options to the Sreenaths related to their June 2016 loss mitigation application.  *See Plaintiffs' Exhibit 6*.

105.     Shellpoint committed a violation of 12 C.F.R. § 1024.35(c) by failing to timely acknowledge the September 20, 2016 Notice of Error.

106.     Shellpoint sent correspondence dated October 24, 2016 in response to the September 20, 2016 Notice of Error. (*See Plaintiffs' Exhibit 7*.)  Shellpoint states Shellpoint did not commit an error as noticed because the Sreenaths failed to provide a "signed and dated Profit and Loss Statement in a quarterly (xx/xx/xxxx-xx/xx/xxxx) format", however, this was never an explicit requirement communicated to the Sreenaths at any point prior to the October 24, 2016 Response. *Id*.

107.     Accordingly, it is clear that Shellpoint did not perform a reasonable investigation into this error alleged by and through the September 20, 2016 Notice of Error as such an investigation would have uncovered the fact that such specific requirements regarding the "Profit

and Loss Statement" were never provided to the Sreenaths.

108.    Accordingly, Shellpoint committed a violation of 12 C.F.R. § 1024.35(e) by failing to properly respond to the September 20, 2016 Notice of Error.

109.    On January 9, 2017, the Sreenaths sent Shellpoint a second Notice of Error for failure to conduct a timely review of loss mitigation options following the Sreenaths' submission of their November 2016 loss mitigation application. *See Plaintiffs' Exhibit 9*.

110.    Shellpoint committed a violation of 12 C.F.R. § 1024.35(c) by failing to timely acknowledge the January 9, 2017 Notice of Error.

111.    Shellpoint committed a violation of 12 C.F.R. § 1024.35(e) by failing to provide any written response to the January 9, 2017 Notice of Error within the applicable timeframe.

112.    On March 24, 2017, the Sreenaths sent Shellpoint a third Notice of Error for failure to investigate and properly respond to the Sreenaths' prior two Notices of Error. *See Plaintiffs' Exhibit 12*.

113.    By letter dated April 17, 2017, Shellpoint finally acknowledged that it had failed to address the errors identified in the Sreenaths' prior Notices of Error. *See Plaintiffs' Exhibit 14*.

114.    In its April 17, 2017 letter, Shellpoint acknowledged that it had received the Sreenaths' November 15, 2016 loss mitigation application and failed to complete a timely review of the application. *Id*.

115.    Rather than correct the error acknowledged in the April 17, 2017 letter by reviewing their facially complete loss mitigation application, Shellpoint demanded additional documents in order to complete a loss mitigation review, while moving forward with foreclosure proceedings. *Id*.

116.    Shellpoint committed a violation of 12 C.F.R. § 1024.35(e) by failing to correct

the admitted error noticed by and through the March 24, 2017 Notice of Error.

117.     Shellpoint's actions are part of a pattern and practice of behavior in conscious disregard for the Sreenaths' rights.

118.     As a result of Shellpoint's actions, Shellpoint is liable to the Sreenaths for actual damages, statutory damages for each violation of 12 C.F.R. § 1024.35(e), costs, and attorneys' fees.

**COUNT FOUR: AGAINST SHELLPOINT AND MANLEY DEAS**
**OHIO CONSUMER SALES PRACTICES ACT**
**R.C. § 1345.02(A)**

119.     The Sreenaths restate and incorporate herein each of their statements and allegations contained in paragraphs 1 through 59 in their entirety, as if fully rewritten herein.

120.     The Ohio Consumer Sales Practices Act is a state consumer protection law prohibiting unfair and deceptive acts and practices by suppliers before, during, or after a consumer transaction.  R.C. § 1345.02(A).

121.     The Sreenaths are consumers, the Loan is a consumer transaction, and Shellpoint and Manley Deas are suppliers as defined by the OCSPA, R.C. § 1345.01

122.     By failing to timely review the Sreenaths' facially complete loss mitigation application while simultaneously moving forward to obtain a foreclosure judgment and sale, Shellpoint and Manley Deas engaged in unfair and deceptive acts and practices in violation of R.C. § 1345.02(A).

123.     As a result of the conduct of Shellpoint and Manley Deas, the Sreenaths face the risk of losing their home.

124.     As a result of the conduct of Shellpoint and Manley Deas, the Sreenaths have suffered anxiety and fear of losing their home.

125.    The conduct of Shellpoint and Manley Deas was outrageous, willful, and wanton, and it showed a reckless disregard for the Sreenaths' rights, and the Sreenaths are entitled to recover actual damages, statutory damages, punitive damages, costs, and attorneys' fees.

### COUNT FIVE: AGAINST MANLEY DEAS
### FAIR DEBT COLLECTION PRACTICES ACT
### 15 U.S.C. § 1692k

126.    The Sreenaths restate and incorporate herein each of their statements and allegations contained in paragraphs 1 through 59 in their entirety, as if fully rewritten herein.

127.    In the course of acting as a debt collector in the state court foreclosure action, Manley Deas received and handled the loss mitigation applications and correspondence between the Sreenaths and Shellpoint.

128.    Although Manley Deas was aware that the Sreenaths had submitted three facially complete loss mitigation applications to Shellpoint which had not yet been reviewed, Manley Deas moved forward with foreclosure litigation in a practice known as "dual tracking" that is specifically prohibited under the federal Real Estate Settlement Procedures Act.

129.    Manley Deas violated 15 U.S.C. § 1692(f) because its conduct as outlined herein constitutes an unconscionable means to collect or to attempt to collect a debt.

130.    Manley Deas violated 15 U.S.C. § 1692(d) by employing an unfair and unconscionable means to collect the subject debt.

131.    The foreclosure case filed by Manley Deas against the Sreenaths remains pending, and the Sreenaths continue to accrue additional legal fees and costs.

132.    In addition, Manley Deas' conduct has caused the Sreenaths to suffer great emotional distress driven by the fear that they might lose their home which has resulted in loss of sleep, anxiety, depression, and embarrassment.

133.     Manley Deas' conduct was outrageous, willful, and wanton, and it showed a reckless disregard for the Sreenaths' rights.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Narasingarao (Sree) and Shobha Sreenath pray that this Court enter its order granting judgment in their favor for the following:

A)     A finding that Shellpoint committed violations of 12 C.F.R. §§ 1024.35 and 1024.41 and the OCSPA as alleged in Counts One through Four;

B)     A finding that Manley Deas committed violations of the FDCPA and OCSPA as alleged in Counts Four and Five;

C)     For actual damages in an amount to be determined at trial as to each and every count;

D)     For costs, and reasonable attorneys' fees;

E)     For statutory damages against Shellpoint in the amount of Two Thousand Dollars ($2,000.00) as to each violation of 12 C.F.R. §§ 1024.35 and 1024.41, as alleged by and through Counts One through Three;

F)     For statutory damages against Manley Deas in the amount of One Thousand Dollars ($1,000.00) for their violation of the FDCPA as alleged in Count Five;

G)     For punitive damages against Shellpoint in an amount to be determined at trial; and,

H)     Such other relief which this Court may deem appropriate.

Respectfully submitted,

*/s/ Marc E. Dann*
Marc E. Dann (0039425)
Emily White (0085662)
Dan Solar (0085632)
Brian D. Flick (0081605)
THE DANN LAW FIRM CO., LPA
P.O. Box 603104
Cleveland, OH 44103
216/373-0539
216/373-0536 – fax
notices@dannlaw.com
*Attorneys for Plaintiffs*

25

## **JURY DEMAND**

Plaintiffs hereby request a trial by jury on all issues, with the maximum number of jurors permitted by law.

> */s/ Marc E. Dann*
> Marc E. Dann (0039425)
> Emily White (0085662)
> Dan Solar (0085632)
> Brian D. Flick (0081605)
> The Dann Law Firm Co., LPA
> *Attorneys for Plaintiffs*